J. C. SCHWINGLE v. C. D. KELLENBERGER AND ELLA J.
KELLENBERGER.

(Filed 22 May, 1940.)

**Negligence § 4d—Evidence held insufficient to be submitted to the jury on the issue of defendant proprietor's negligence in maintaining stairs.**

Evidence that plaintiff, after his assignment to a room in defendant's tourist inn, fell as he was descending the stairs which he had ascended a few minutes earlier, without any positive evidence raising more than a conjecture that there was any slippery substance on the stairs *is held* insufficient to be submitted to the jury on the issue of negligence, the burden being upon plaintiff to show the presence of a dangerous substance or article on the stairs and that defendant had express or implied notice thereof in time to have removed it or to have warned plaintiff of the danger.

SCHWINGLE *v.* KELLENBERGER.

APPEAL by plaintiff from *Rousseau, J.*, at 5 February Term, 1940, of GUILFORD. Affirmed.

This is an action for actionable negligence brought by plaintiff against defendants alleging damage. The defendants denied negligence and set up the plea of contributory negligence. The defendants are the owners of certain premises in Greensboro, N. C., which were known as "Shady Lawn Inn" and open to tourists. The plaintiff and his wife went to the Inn about 7:00 o'clock p.m., on Sunday, 26 March, 1939, "just becoming twilight," and were received as guests and assigned a room on the second floor. About two hours later plaintiff started down to the first floor to register, using the same stairway which he had ascended. The stairway was winding, with three landings and had a banister or railing. Plaintiff looked at the steps and observed them as he went up to his room, but did not observe anything abnormal about the type of construction of the stair-steps. He observed that the tread of the stairs was bare and that it was an ordinary stairway found in dwellings. He did not observe the steps as to whether there was any foreign substance, like trash or dirt, on them. There was a dim light in the hall and as plaintiff came down the stairs there was an electric light in front of him—not many inches above his head. Plaintiff weighed 200 to 210 pounds. He wore glasses and for 17 years had suffered with phlebitis in the calf of his left leg. He wore high shoes with rubber heels.

On plaintiff's direct examination, he testified, in part: "When I had made two or three or four steps down the staircase, my right foot slipped on the tread of the stairs and it shot forward at the same time my body shot forward, and before I could get my left foot firmly planted on the stairs, my left foot had slipped over the edge of the steps, catching the front edge of my heel on my shoe, thereby throwing the weight of my entire body on my left leg which was underneath me. I fell on my left leg. When I fell, my left hand struck the surface of the stair steps. My right hand was still gripping the railing. When my left hand struck the surface of the stair steps, I felt a slippery sensation—I don't know what it was but that was on my left hand, which was the only one touching the stairs as I tried to lift myself from this doubled-up position."

On cross-examination, plaintiff testified, in part: "When I got to the top of the stairs, that is, before I stepped off of the hall floor level of the upstairs of the house, I observed that my own shadow was in front of me. I would say it affected my clear sight of the steps. Before I touched a single step going downstairs, I observed that in front of me and knew that my own shadow interfered with my ability to see the steps in front of me. There was nothing I could do about it and I did nothing about it. I then continued to walk in the dark. I attempted to walk downward, down the stairway that I could not see. . . . The lights

in the reception room downstairs were lighted. I testified that the lights from the reception room sifted through the banister railing and cast some light on the stairs. I had gone three or four steps before I fell. I cannot be more positive than that; I know I fell on either the third or fourth step. I did not observe to see whether there was any distinction between the third and fourth steps and any other steps between the bottom and the top. So far as I know, even now, there was nothing about the third or fourth steps that was any different from conditions existing with respect to the other steps from the top to the bottom. When I got to either the third or fourth step I slipped on the ball of my right foot. If I had to say definitely whether the heel was off the floor, I could not do it, but this I do know: that you don't slip with rubber heels. If I had to draw a conclusion I would say that when I slipped with my right foot that my heel was not on the steps but that the ball of my foot was resting there; but as to actual knowledge of that I have no way of knowing. I am positive that I slipped with the right foot but whether on the ball or whether on the inside of foot I cannot say. There is certainly a difference between slipping with your right foot and the ball of your foot. All I can be accurate about is that I slipped with my right foot. I don't say that I slipped with the rubber heel. I wish to tell the jury that I do not know just how I slipped."

At the conclusion of all the evidence for the plaintiff and defendants, the court below granted a motion for judgment as of nonsuit. Plaintiff excepted, assigned error and appealed to the Supreme Court.

*Harry R. Stanley* for plaintiff.
*Hines & Boren* for defendants.

CLARKSON, J. At the close of plaintiff's evidence the defendants made a motion for judgment as in case of nonsuit. C. S., 567. The court below overruled this motion. At the conclusion of all the evidence the defendants renewed their motion, which the court below sustained. In this we can see no error.

Speaking to the subject of the duty imposed upon owners to invitees, in *Sams v. Hotel Raleigh,* 205 N. C., 758 (760), it is written: "In order to establish a breach of duty so imposed the injured party must offer evidence tending to show (a) defective or negligent construction or maintenance; (b) express or implied notice of such defects," citing authorities.

In *Brown v. Montgomery Ward & Co., ante,* 368 (370-1), we find: "The duty of proprietors of buildings with respect to invitees on their premises has been frequently stated in the decisions of this Court. . . . (citing authorities). The consensus of these authorities is that the occu-

pant of premises to which others are invited to come for business or pleasure owes to such persons the duty to exercise due care to keep the premises in a reasonably safe condition and to give warning of any hidden peril. The proprietor, however, is not an insurer of safety, and when claim is made on account of injury caused by some article or substance on the floor along and upon which customers may be expected to walk, in order to justify recovery it must be made to appear that the proprietor either placed or permitted the harmful substance to be there, or that he knew or by the exercise of due care should have known of its presence in time to have removed the danger or given proper warning of its presence. . . . (citing authorities). As was said in *Cummings v. R. R., ante,* 127, 'There must be legal evidence of every material fact necessary to support the verdict.' "

The injury to plaintiff was unfortunate and distressing, but we see no sufficient evidence for the case to be submitted to a jury. On the entire evidence there was no negligence on the part of defendants and perhaps contributory negligence on the part of plaintiff—from his own testimony.

For the reasons given, the judgment of the court below is
Affirmed.